Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASTELLAS PHARMA INC.; ASTELLAS US LLC; ASTELLAS PHARMA US, INC.; MEDIVATION LLC; MEDIVATION PROSTATE THERAPEUTICS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALEMBIC PHARMACEUTICALS LIMITED, ALEMBIC PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. __________________ |

**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiffs Astellas Pharma Inc. ("API"), Astellas US LLC ("AUS"), and Astellas Pharma US, Inc. ("APUS") (collectively, "Astellas"), and Medivation LLC and Medivation Prostate Therapeutics LLC ("MPT") (collectively, "Medivation") (all collectively, "Plaintiffs"), for their Complaint against Defendants Alembic Pharmaceuticals Limited ("Alembic Ltd.") and Alembic Pharmaceuticals, Inc. ("Alembic Inc.") (collectively, "Alembic"), hereby allege as follows:

## THE PARTIES

1. Plaintiff API is a corporation organized and existing under the laws of Japan having its principal place of business at 2-5-1, Nihonbashi-Honcho, Chuo-Ku, Tokyo 103-8411, Japan.

2. Plaintiff AUS is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

3. Plaintiff APUS is a corporation organized and existing under the laws of the state of Delaware having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

4. Plaintiff Medivation LLC is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 66 Hudson Boulevard East, New York, New York 10001-2192, United States.

5. Plaintiff MPT is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 66 Hudson Boulevard East, New York, New York 10001-2192, United States.

6. On information and belief, Defendant Alembic Ltd. is a corporation organized and existing under the laws of India having a principal place of business at Alembic Road, Vadodara 390003, Gujarat, India.

7. On information and belief, Alembic Ltd., by itself and/or through its affiliates and agents, including Alembic Inc., is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

8. On information and belief, Defendant Alembic Inc. is a corporation organized and existing under the laws of the state of Delaware having a principal place of business at 550 Hills Drive, Suite 104B Bedminster, New Jersey 07921, United States.

9. On information and belief, Alembic Inc., by itself and/or through its affiliates and agents, including Alembic Ltd., is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

10. On information and belief, Alembic Inc. is a wholly-owned subsidiary of Alembic Ltd.

11. On information and belief, Alembic Ltd. and Alembic Inc. are agents of each other and/or operate in concert with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic products. On information and belief, the acts of Alembic Ltd. and Alembic Inc. complained of herein were done with the cooperation, participation, and assistance of, and at least in part, for the benefit of, each other.

12. On information and belief, Defendants Alembic Ltd. and Alembic Inc. have cooperated and assisted in the preparation and filing of Alembic's Abbreviated New Drug Application ("ANDA") No. 221846 and will be involved in the manufacture, importation, marketing, and sale of the drug product that is the subject of ANDA No. 221846 if it is approved.

## NATURE OF THE ACTION

13. This is a civil action for the infringement of United States Patent Nos. 11,839,689 ("the '689 patent"), 12,161,628 ("the '628 patent"), and 12,502,357 ("the '357 patent") (collectively, the "Xtandi® patents") under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., arising from Alembic's filing of ANDA No. 221846 with the United States Food and Drug Administration ("FDA") seeking approval to market generic versions of the pharmaceutical

products Xtandi® tablets, 40 and 80 mg, before the expiration of Plaintiffs' patents covering Xtandi® tablets and their use.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

15. This Court has personal jurisdiction over Alembic by virtue of the fact that, *inter alia*, Alembic has committed the tortious act of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the state of New Jersey and throughout the United States.

16. This Court has personal jurisdiction over Alembic by virtue of the fact that Alembic is at home in New Jersey as reflected by the fact that, on information and belief, Alembic regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, including by selling its pharmaceutical products in New Jersey and, therefore, Alembic can reasonably expect to be subject to jurisdiction in the New Jersey courts. Among other things, on information and belief, Alembic conducts marketing and sales activities in the state of New Jersey, including, but not limited to, distribution, marketing, and sales of pharmaceutical products to New Jersey residents that are continuous and systematic. On information and belief, if Alembic's ANDA No. 221846 is approved, Alembic will market and sell its generic versions of Xtandi® tablets in New Jersey.

17. This Court has personal jurisdiction over Alembic by virtue of the fact that Alembic has previously submitted to the jurisdiction of this Court and availed itself of this Court by asserting counterclaims in civil actions initiated in this jurisdiction, including, but not limited to,

*e.g.*, *Adverio Pharma GmbH et al. v. Alembic Pharms. Ltd. et al.*, No. 2:23-cv-01285 (D.N.J.); *Adverio Pharma GmbH et al. v. Alembic Pharms. Ltd. et al.*, No. 2:22-cv-06104 (D.N.J.); *Actelion Pharms. Ltd. et al. v. MSN Pharms. Inc. et al.*, No. 1:20-cv-03859 (D.N.J.). On information and belief, Alembic Ltd. previously submitted to the jurisdiction of this Court and availed itself of the legal protections of the state of New Jersey by having filed suit in this jurisdiction. *See, e.g.*, *Alembic Pharms. Ltd. v. Novartis Pharms. Corp. et al.*, No. 2:19-cv-20890 (D.N.J.).

18. Alternatively, assuming that the above facts do not establish personal jurisdiction over Alembic Ltd., this Court may exercise jurisdiction over Alembic Ltd. pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Plaintiffs' claims arise under federal law; (b) Alembic Ltd. is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Alembic Ltd. has sufficient contacts with the United States as a whole, including, but not limited to manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Alembic Ltd. satisfies due process.

19. This Court also has personal jurisdiction over Alembic Inc. by virtue of the fact that, on information and belief, Alembic Inc. has a principal place of business in New Jersey. Alembic Inc. has an active business entity status registered with the New Jersey Department of Treasury under business entity identification number 0101031141 and maintains a principal place of business at 550 Hills Drive, Suite 104B Bedminster, New Jersey 07921. On information and belief, Alembic Inc. has registered with the New Jersey Department of Health as a drug distributor and manufacturer operating in New Jersey under registration number 5004785.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

21. Venue is proper in this judicial district as to Alembic Ltd. because, among other things, Alembic Ltd. is a foreign corporation not residing in any United States district and may be sued in any judicial district.

22. Venue is proper in this judicial district for Alembic Inc. because, among other things, on information and belief, Alembic Inc. has an active business entity status registered with the New Jersey Department of Treasury under business entity identification number 0101031141 and maintains a principal place of business at 550 Hills Drive, Suite 104B Bedminster, New Jersey 07921. On information and belief, Alembic Inc. has registered with the New Jersey Department of Health as a drug distributor and manufacturer operating in New Jersey under registration number 5004785. On information and belief, based on Alembic Inc.'s presence in and connections to New Jersey, discoverable information in Alembic Inc.'s possession, custody, or control regarding Alembic's ANDA No. 221846 will show that Alembic Inc. engaged in activities in New Jersey relevant to the preparation and/or submission of Alembic's ANDA No. 221846.

23. Venue is further proper in this judicial district as to Alembic because, among other things, Alembic has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture Xtandi® for sale and use throughout the United States, including within the state of New Jersey.

## **THE XTANDI® TABLET NDA**

24. APUS filed New Drug Application ("NDA") No. 213674 for Xtandi® (enzalutamide) tablets, 40 mg and 80 mg. The FDA approved NDA No. 213674 for Xtandi® 40 mg and 80 mg tablets on August 4, 2020, for the treatment of patients with castration-resistant prostate cancer and metastatic castration-sensitive prostate cancer. On November 16, 2023, the FDA approved an

expanded indication for the use of Xtandi® 40 mg and 80 mg tablets to treat patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. Xtandi® tablets are sold and co-promoted by APUS and Pfizer Inc. in the United States.

25. Enzalutamide is a compound that can be referred to by any of several chemical names, including 4-{3-[4-cyano-3-(trifluoromethyl)phenyl]-5,5-dimethyl-4-oxo-2-sulfanylideneimidazolidin-1-yl}-2-fluoro-N-methylbenzamide, 4-{3-(4-cyano-3-(trifluoromethyl)phenyl)-5,5-dimethyl-4-oxo-2-thioxoimidazolidin-1-yl}-2-fluoro-N-methylbenzamide, 4-[3-[4-cyano-3-(trifluoromethyl)phenyl]-4-keto-5,5-dimethyl-2-thioxo-imidazolidin-1-yl]-2-fluoro-N-methyl-benzamide, and 4-[3-[4-cyano-3-(trifluoromethyl)phenyl]-5,5-dimethyl-4-oxo-2-sulfanylidene-1-imidazolidinyl]-2-fluoro-N-methylbenzamide, and which has the following chemical structure:



**THE PATENTS-IN-SUIT**

26. On December 12, 2023, the ’689 patent, entitled “Formulations of Enzalutamide,” was duly and legally issued to API and MPT. A true and correct copy of the ’689 patent is attached hereto as Exhibit A.

27. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the ’689 patent is listed in the FDA’s Approved Drug Products with Therapeutic Equivalence Evaluations (also known as the “Orange Book”) for Xtandi® 40 mg and 80 mg tablets.

28. On December 10, 2024, the ’628 patent, entitled “Combination Therapy,” was duly and legally issued to API and MPT. A true and correct copy of the ’628 patent is attached hereto as Exhibit B.

29. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the ’628 patent is listed in the Orange Book for Xtandi® 40 mg and 80 mg tablets.

30. On December 23, 2025, the ’357 patent, entitled “Formulations of Enzalutamide,” was duly and legally issued to API and MPT. A true and correct copy of the ’357 patent is attached hereto as Exhibit C.

31. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the ’357 patent is listed in the Orange Book for Xtandi® 40 mg and 80 mg tablets.

32. Pursuant to an agreement, as amended, entered into between API, AUS, Medivation, Inc., and Medivation Prostate Therapeutics, Inc., API was granted an exclusive license to the Xtandi® patents.

33. Pursuant to an agreement, as amended, entered into between API and AUS, AUS was granted a sublicense to the Xtandi® patents.

34. Pursuant to an agreement entered into between AUS and APUS, APUS was granted a sublicense to the Xtandi® patents.

35. On September 28, 2016, Pfizer Inc. acquired Medivation, Inc. and its wholly owned subsidiary Medivation Prostate Therapeutics, Inc.

36. On August 28, 2017, Medivation, Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Medivation, Inc. converted from a corporation to a limited liability company and changed its name to Medivation LLC.

37. On August 28, 2017, Medivation Prostate Therapeutics, Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Medivation Prostate Therapeutics, Inc. converted from a corporation to a limited liability company and changed its name to Medivation Prostate Therapeutics LLC.

## CLAIMS FOR RELIEF – PATENT INFRINGEMENT

38. By a letter dated August 21, 2026 ("Alembic's Notice Letter"), Alembic advised APUS, API, and MPT that Alembic had submitted ANDA No. 221846 to the FDA seeking approval to manufacture, use, or sell enzalutamide 40 mg and 80 mg tablets ("Alembic's Generic Products") prior to the expiration of the '689, '628, and '357 patents.

39. On information and belief, Alembic submitted ANDA No. 221846 to the FDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), seeking approval to engage in the commercial manufacture, use, and sale of Alembic's Generic Products as generic versions of Xtandi® 40 mg and 80 mg tablets.

40. On information and belief, ANDA No. 221846 seeks FDA approval of Alembic's Generic Products for the indications of treatment of castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

41. Alembic's Notice Letter also advised APUS, API, and MPT that Alembic's ANDA submission included a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) that, in Alembic's opinion, the claims of the '689, '628, and '357 patents are invalid, unenforceable, and/or not infringed.

42. Alembic's Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, or 112, or unenforceability of any claim of the '689 and '357 patents.

43. By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, or 112, or unenforceability defenses for the ’689 and ’357 patents in Alembic’s Notice Letter, Alembic admits the claims of the ’689 and ’357 patents are valid under 35 U.S.C. §§ 101, 102, 103, and 112, and are enforceable.

44. Alembic’s Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, or 112, or unenforceability of any claim of the ’628 patent.

45. By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, or 112, or unenforceability defenses for the ’628 patent in Alembic’s Notice Letter, Alembic admits the claims of the ’628 patent are valid under 35 U.S.C. §§ 101, 102, and 112, and are enforceable.

46. There is an actual, real, immediate, and justiciable controversy between Plaintiffs and Alembic regarding the infringement, validity, and enforceability of the Xtandi® patents.

47. Plaintiffs commenced this action within 45 days of receiving Alembic’s Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

## COUNT I
## (Infringement of the ’689 Patent)

48. Plaintiffs incorporate each of the preceding paragraphs 1 to 47 as if fully set forth herein.

49. By submitting ANDA No. 221846 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Alembic’s Generic Products throughout the United States, including New Jersey, prior to expiration of the ’689 patent, Alembic committed an act of infringement of the ’689 patent under 35 U.S.C. § 271(e)(2)(A).

50. The ’689 patent claims, *inter alia*, pharmaceutical compositions of enzalutamide. Claim 1 recites “a pharmaceutical composition comprising a solid dispersion consisting essentially

of amorphous enzalutamide and hydroxypropyl methylcellulose acetate succinate" ("HPMCAS"). Certain dependent claims specify that the formulation is a tablet.

51. The formulation of Xtandi® tablets, 40 and 80 mg, contains a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and HPMCAS. The formulation of Xtandi® tablets, 40 and 80 mg, is covered by the '689 patent.

52. Alembic's Notice Letter does not dispute that Alembic's Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide, or that those tablets contain HPMCAS.

53. On information and belief, Alembic copied the claimed inventions of the '689 patent.

54. On information and belief, Alembic was not required to copy the claimed inventions of the '689 patent or the Xtandi® tablets formulation.

55. On information and belief, Alembic's Generic Products, if approved by the FDA, will contain a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and HPMCAS or an equivalent thereof, which will constitute infringement of claims of the '689 patent.

56. On information and belief, Alembic's manufacture, use, sale, offer for sale, and/or importation into the United States of Alembic's Generic Products prior to the expiration of the '689 patent, including any applicable exclusivities or extensions, will directly infringe the '689 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents. Alembic will infringe one or more claims of the '689 patent.

57. On information and belief, Alembic was aware of the existence of the '689 patent and its listing in the Orange Book as demonstrated by Alembic's reference to the '689 patent in Alembic's Notice Letter.

58. On information and belief, Alembic knows or should know that its commercial manufacture, use, offer for sale, sale, and/or importation of Alembic's Generic Products prior to patent expiry will infringe one or more claims of the '689 patent.

59. On information and belief, Alembic's statement of the purported factual and legal bases for Alembic's opinions regarding non-infringement and invalidity of the '689 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

60. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

**COUNT II**
**(Infringement of the '628 Patent)**

61. Plaintiffs incorporate each of the preceding paragraphs 1 to 60 as if fully set forth herein.

62. By submitting ANDA No. 221846 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Alembic's Generic Products throughout the United States, including New Jersey, prior to the expiration of the '628 patent, Alembic committed an act of infringement of the '628 patent under 35 U.S.C. § 271(e)(2)(A).

63. On information and belief, Alembic was aware of the existence of the '628 patent and its listing in the Orange Book as demonstrated by Alembic's reference to the '628 patent in Alembic's Notice Letter.

64. On information and belief, Alembic intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Alembic's Generic Products

with prescribing information ("the label") immediately and imminently upon final approval of Alembic's ANDA No. 221846.

65. The '628 patent claims, *inter alia*, methods of treating prostate cancer in patients to whom rifampin is administered. Claim 1 recites a "method of treating prostate cancer in a patient to whom rifampin is administered, comprising co-administering to the patient a daily dose of 240 mg of enzalutamide."

66. On information and belief, Alembic's manufacture, use, sale, offer for sale, and/or importation into the United States of Alembic's Generic Products prior to the expiration of the '628 patent, including any applicable exclusivities or extensions, will actively induce infringement of at least Claim 1 of the '628 patent under 35 U.S.C. § 271(b). Alembic will take affirmative steps, including at least inserting language in the label for Alembic's Generic Products that Alembic knows instructs, promotes, encourages, and will inevitably cause healthcare providers, caregivers, and/or patients to co-administer a 240 mg daily dose of enzalutamide in Alembic's Generic Products to treat prostate cancer in a patient to whom rifampin is administered according to Claim 1 of the '628 patent.

67. On information and belief, the label for Alembic's Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which disclose and encourage the practice of all the elements of Claim 1 of the '628 patent.

68. Upon information and belief, the label for Alembic's Generic Products will direct the use of Alembic's Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. On information and belief, the label for

Alembic's Generic Products will identify rifampin as a strong CYP3A4 inducer that decreases plasma concentrations of enzalutamide and its active metabolite and direct the co-administration of Alembic's Generic Products at a dose of 240 mg orally once daily in patients who are receiving rifampin.

69. On information and belief, Alembic's Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, who are also receiving rifampin, at a daily dose of 240 mg/day, which will constitute infringement of at least Claim 1 of the '628 patent. This will be an approved use of Alembic's Generic Products.

70. On information and belief, this directly infringing use will occur with Alembic's specific intent and active encouragement and will be a use that Alembic knows or should know will occur.

71. On information and belief, Alembic copied the claimed inventions of the '628 patent.

72. On information and belief, Alembic will actively induce, encourage, aid, and abet infringing prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '628 patent.

73. On information and belief, Alembic's acts will be performed with knowledge of the '628 patent and with specific intent and active encouragement of infringement prior to patent expiry.

74. On information and belief, Alembic's statement of the purported factual and legal bases for Alembic's opinions regarding non-infringement and invalidity of the '628 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

75. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

**COUNT III**
**(Infringement of the ’357 Patent)**

76. Plaintiffs incorporate each of the preceding paragraphs 1 to 75 as if fully set forth herein.

77. By submitting ANDA No. 221846 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Alembic’s Generic Products throughout the United States, including New Jersey, prior to expiration of the ’357 patent, Alembic committed an act of infringement of the ’357 patent under 35 U.S.C. § 271(e)(2)(A).

78. On information and belief, Alembic was aware of the existence of the ’357 patent and its listing in the Orange Book as demonstrated by Alembic’s reference to the ’357 patent in Alembic’s Notice Letter.

79. On information and belief, Alembic intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Alembic’s Generic Products with the label immediately and imminently upon final approval of Alembic’s ANDA No. 221846.

80. The ’357 patent claims a method of treating prostate cancer comprising administering a pharmaceutical composition of enzalutamide. Claim 1 recites a “method of treating prostate cancer comprising administering to a patient in need thereof a tablet comprising a solid dispersion comprising amorphous enzalutamide and hydroxypropyl methylcellulose acetate succinate.”

81. Xtandi® tablets, 40 and 80 mg, are tablets comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS. Xtandi® tablets are indicated to treat castration-resistant

prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. The use of Xtandi® tablets, 40 and 80 mg, is covered by the ’357 patent.

82. Alembic’s Notice Letter does not dispute that Alembic’s Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide, that those tablets contain HPMCAS, or that those tablets will be used to treat prostate cancer.

83. On information and belief, Alembic’s Generic Products, if approved by the FDA, will be tablets comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS or an equivalent thereof.

84. On information and belief, Alembic’s Generic Products, if approved by the FDA, will be prescribed and administered to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

85. On information and belief, Alembic’s manufacture, use, sale, offer for sale, and/or importation into the United States of Alembic’s Generic Products prior to the expiration of the ’357 patent, including any applicable exclusivities or extensions, will actively induce infringement of the ’357 patent under 35 U.S.C. § 271(b) and will constitute contributory infringement of the ’357 patent under 35 U.S.C. § 271(c). Alembic will take affirmative steps, including at least inserting language in the label for Alembic’s Generic Products that Alembic knows instructs, promotes, encourages, and will inevitably cause healthcare providers, caregivers, and/or patients to treat prostate cancer by administering a tablet comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS or an equivalent thereof according to Claim 1 of the ’357 patent.

86. On information and belief, Alembic's Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which encourage the practice of all the elements of Claim 1 of the '357 patent.

87. Upon information and belief, the label for Alembic's Generic Products will direct the use of Alembic's Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

88. On information and belief, Alembic's Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, which will constitute infringement of Claim 1 of the '357 patent. This will be an approved use of Alembic's Generic Products.

89. On information and belief, this directly infringing use will occur with Alembic's specific intent and active encouragement and will be a use that Alembic knows or should know will occur.

90. On information and belief, Alembic copied the claimed invention of the '357 patent.

91. On information and belief, Alembic was not required to copy the claimed invention of the '357 patent or the Xtandi® tablets formulation.

92. On information and belief, Alembic will actively induce, encourage, aid, and abet infringing prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '357 patent.

93. On information and belief, Alembic knows or should know that Alembic's Generic Products will be especially made or especially adapted for use in a manner that will constitute infringement of the '357 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

94. On information and belief, Alembic's acts will be performed with knowledge of the '357 patent and with specific intent and active encouragement of infringement prior to patent expiry.

95. On information and belief, Alembic's statement of the purported factual and legal bases for Alembic's opinions regarding non-infringement and invalidity of the '357 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

96. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A judgment that Alembic has infringed one or more claims of United States Patent Nos. 11,839,689, 12,161,628, and 12,502,357 by submitting and maintaining ANDA No. 221846 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of Alembic's Generic Products before the expiration of the patents under 35 U.S.C. § 271(e)(2)(A);

B. A judgment that Alembic's commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of Alembic's Generic Products will infringe one or more claims of United States Patent Nos. 11,839,689, 12,161,628, and 12,502,357 under 35 U.S.C. §§ 271(a), (b) and/or (c);

C. A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining Alembic, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of Alembic's Generic Products prior to the expiration date of United States Patent Nos. 11,839,689, 12,161,628, and 12,502,357, inclusive of any extensions;

D. An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 221846 under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 11,839,689, 12,161,628, and 12,502,357, inclusive of any extensions;

E. A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

F. An award of costs and expenses in this action; and

G. Such other and further relief as the Court may deem just and proper.

Dated: October 5, 2026

*OF COUNSEL*:

Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)

*/s/ Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
Michelle Lavrichenko (*phv forthcoming*)
VENABLE LLP
151 West 42nd Street
New York, NY 10036

*Attorneys for Plaintiffs*

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending litigation in any court, administrative proceeding, or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action, but this action is related to the following action:

- *Astellas Pharma Inc. et al. v. Macleods Pharms. Ltd. et al.*, No. 3:26-cv-09635 (MAS) (RLS), pending in the United States District Court for the District of New Jersey.

Dated: October 5, 2026

*/s/ Liza M. Walsh*

Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*OF COUNSEL:*

Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)
Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
Michelle Lavrichenko (*phv forthcoming*)
VENABLE LLP
151 West 42nd Street
New York, NY 10036

**LOCAL RULE 201.1 CERTIFICATION**

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, *inter alia*, injunctive relief.

Dated: October 5, 2026

*/s/ LizaM. Walsh*
Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*OF COUNSEL:*

Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)
Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
Michelle Lavrichenko (*phv forthcoming*)
VENABLE LLP
151 West 42nd Street
New York, NY 10036